327-20/MAM/EJM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY  10005
Tel: (212) 425-1900
Fax: (212) 425-1901
Manuel A. Molina
Eric J. Matheson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN STEAMSHIP OWNERS
MUTUAL PROTECTION & INDEMNITY
ASSOCIATION, INC.,

                         Plaintiff,

        -against-

GLOBALGAS S.A.,

                         Defendant.

**20 CIV. 5630**   (          )


**COMPLAINT**

Plaintiff, AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION & INDEMNITY ASSOCIATION, INC. (hereinafter "The American Club"), by its attorneys Freehill Hogan & Mahar, LLP, as for its Complaint against Defendant GLOBALGAS S.A. (hereinafter "Globalgas" or the "Defendant"), upon information and belief, alleges the following:

## JURISDICTION AND VENUE

1.      These are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that they involve claims for breaches of a marine insurance contract. The claims also fall within this Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333, *et seq.*, and the Court's federal question jurisdiction under 28 U.S.C. § 1331. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity).

2.     This Court is vested with personal jurisdiction over the Defendant Globalgas because of the law and jurisdiction clause contained in the subject marine insurance contracts. In addition, Defendant has transacted business in the State of New York by, *inter alia*, negotiating and executing the subject contracts with, and paying premiums to, an insurer domiciled in the State. Moreover, the causes of action asserted herein arise out of the Defendant's breaches of the said marine insurance contracts and/or the contacts of the Defendant with the forum.

3.     Venue is proper because the Defendant has contractually agreed to submit to the jurisdiction of this Court.

## THE PARTIES

4.     The American Club, at all times relevant hereto, was and still is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at One Battery Park Plaza, New York, New York 10004.

5.     Globalgas, at all times relevant hereto, was and still is a business entity organized and existing under the laws of Spain, with an office and place of business located at Calle Ulises 102, Bajo, Madrid 28043 Spain. Globalgas is the registered owner of the M/T CELANOVA, a Spanish-flagged vessel, IMO Number 9268394, call sign ECBX, and registered at the port of Santa Cruz de Tenerife, Canary Islands.

## NATURE OF THE CLAIMS

6.     The American Club is a mutual protection and indemnity club providing marine insurance to vessels, their shipowners, managers and charterers against third-party liabilities encountered in their commercial operations. The American Club offers coverage for Protection and Indemnity ("P&I") and for Freight, Demurrage and Defense ("FD&D").

7.     From February 20, 2016 to January 8, 2020, The American Club provided marine insurance to the M/T CELANOVA and Globalgas.   The subject marine insurance contracts

2

consist of the Certificates of Entry for P&I and FD&D coverages, The American Club's By-Laws and Rules for the policy years 2016-2017, 2017-2018, 2018-2019 and 2019-2020, and The American Club's Circulars, all of which are incorporated by reference in the Certificates of Entry The American Club issued to the Defendant during the aforementioned policy years. Copies of the P&I and FD&D Certificates of Entry are annexed hereto as Exhibit A.

8.      Globalgas, as a "Member" of The American Club, was required to pay The American Club insurance premiums known in the industry as Advance, Supplementary and Release Calls, as per the terms and conditions of the subject marine insurance contracts.

### A. *Claim for Outstanding Premiums.*

9.      At all relevant times herein, Defendant Globalgas and the M/T CELANOVA received P&I and FD&D insurance coverage, with Globalgas paying for most of the premiums due and owing.  To date, however, Globalgas has failed to remit to The American Club payment for P&I and FD&D premiums, issued in the form of Advance, Supplementary, and Release Calls, which total the sum of $79,617.71. A Statement of Account for the outstanding P&I and FD&D insurance premiums owed by Globalgas to The American Club is annexed hereto as Exhibit B.[1]

10.      Because the marine insurance coverage for policy year 2019-2020 was terminated prior to February 20, 2020, The American Club then calculated the return premium to be credited to Globalgas, ultimately calculating the pro-rated P&I and FD&D premium credits from January 8, 2020 to the end of the policy year to be $8,478.55 and $1,538.87, respectively. (*See* Exhibit B annexed hereto.)

---

[1] Once the marine insurance at issue was terminated on January 8, 2020, The American Club issued Release Calls for P&I and FD&D coverage in the sums of $30,700.72 and $5,570.36, respectively. A Release Call is the premium that, when coverage ceases for whatever reason, every departing Member must pay to The American Club to be released from liability for any future additional premiums that may become due in a given policy year. Here, Release Calls were issued for the policy years 2017-2018, 2018-2019 and 2019-2020.  (*See* Exhibit B annexed hereto.)

11.     To date, Globalgas has failed to remit payment for any of the outstanding premiums due and owing to The American Club in the sum of $79,617.71, as reflected in Exhibit B annexed hereto.

12.     The American Club has met all of its obligations under the subject marine insurance contracts.

**B. *Claims for Sums Disbursed by The American Club on Behalf of Globalgas to Tow and Repair the Vessel.***

13.     On or about December 7, 2019 the M/T CELANOVA, loaded with approximately 4,267.059 MT of 1,3 Butadiene onboard, suffered a rudder failure near the Philippines while she was proceeding to a discharge port in China.

14.     On or about December 9, 2019, Globalgas, through its insurance broker, advised The American Club of the vessel's rudder failure and requested The American Club's assistance on an emergency basis because the vessel was then drifting, imperiling the safety of the crew, the vessel and the cargo.

15.     Globalgas also requested assistance from The American Club regarding the towing of the vessel to safety to a port of refuge.

16.     Fully aware that these towing expenses were not covered by The American Club's insurance cover and being financially unable to pay for the towing expenses, Globalgas requested, directly and through its insurance broker, that The American Club pay for such expenses in the first instance.

17.     Faced with an emergency situation, with the M/T CELANOVA fully-laden with volatile cargo and rudderless, perilously drifting on the high seas, The American Club agreed to assist Globalgas.

4

18.     The American Club thereafter on  December 15, 2019, promptly arranged, and on December 18, 2019, paid for the services of a salvage company to tow the M/T CELANOVA to safety to the nearest refuge port, the Port of Manila, the Philippines.

19.     The towing expenses would be covered by the Hull & Machinery insurance Globalgas was required to obtain for the vessel, with The American Club recovering its expenses from the Hull & Machinery underwriter. In fact, prior to December 23, 2019, Globalgas had represented to The American Club that the vessel possessed Hull & Machinery insurance.

20.     On December 23, 2019, Globalgas admitted to The American Club that Globalgas had no Hull & Machinery insurance.

21.     When the vessel arrived at the Port of Manila on December 22, 2019, The American Club had also arranged for a marine surveyor to attend the vessel at her arrival at Manila.

22.     On January 6, 2020, while attending onboard the M/T CELANOVA, the marine surveyor discovered that 2 of the 3 vessel's generators required to power the cooling system for the volatile cargo onboard were inoperative.  As a result, the surveyor advised that the cargo was overheating and over-pressurizing to dangerous levels which conditions, in turn, would likely create a reaction, known as polymerization.  Polymerization would ultimately lead to a violent exothermic reaction onboard that would disseminate death, injury, pollution and cargo loss.

23.     Normally, any repairs required by the vessel under the circumstances would be borne by the vessel's Hull & Machinery underwriter. In fact, under The American Club's Class I, Rule 3, Section 2, such expenses were expressly excluded from the marine insurance coverage at issue.

24.     Nevertheless, aware that Globalgas had obtained no Hull & Machinery insurance to cover these expenses and given the emergency situation developing onboard, The American

Club arranged for the attendance of, among others, the services of ship repair and parts supplying companies to effect emergency repairs on the 2 vessel generators as well as the services of cargo specialists to care for and preserve the volatile cargo in an effort to prevent a catastrophic cargo explosion and potential loss of life.

25.     As a result of The American Club's efforts and the provisions of necessaries and repairs to the vessel, a catastrophic explosion onboard the M/T CELANOVA was averted.

26.     The American Club incurred the total sum of $479,860.46 in covering the foregoing expenses. The American Club subsequently invoiced Globalgas for all such expenses. (Exhibit C annexed hereto, Statement of Account.)[2]

27.     Payment of the invoices presented by The American Club was due upon Globalgas' receipt of same. To date, Globalgas has failed to remit any payments to The American Club for all expenses it incurred on behalf of Globalgas.

28.     Globalgas is liable to The American Club in the sum of $479,860.46.

29.     By reason of the foregoing, The American Club now seeks to recover from the Defendant the total sum of $559,478.17, that is, $79,617.71 (for outstanding premiums) plus $479,860.46 (for reimbursement of expenses incurred for the provision of towing services, necessaries and vessel repair expenses), plus interest at the contractually agreed rate.[3]

30.     Pursuant to The American Club's Class I, Rule 4, Section 11, Globalgas is contractually obligated to pay "interest at the rate of 1% per month . . . payable on any premium

---

[2] The American Club received two payments from Globalgas in January 2020, totaling $22,019.10, which were credited to Globalgas on the non-premium Statement of Account. (*See* Exhibit C annexed hereto.)

[3] The M/T CELANOVA has remained to this date at the Port of Manila. Globalgas was required to continue paying the wages of all crew members onboard and to pay any repatriation crew expenses. Globalgas, however, has abandoned the vessel and her crew and The American Club, under the requirements of the Maritime Labour Convention 2006, as amended ("MLC"), is obligated, in the first instance, to pay crew member wages up to four months and pay for their repatriation expenses. The American Club is now in the process of complying with the MLC requirements and hereby reserves its right to amend the Complaint to recover from the Defendant all such payments and expenses which, at present, are estimated to exceed $292,000.

or other sums due to [The American Club] as from the due date of payment of such premium or other sums."

**TERMINATION OF P&I AND FD&D MARINE INSURANCE COVERAGE**

31.     Pursuant to the International Convention for the Safety of Life at Sea, dated November 1, 1974, vessels like the M/T CELANOVA, to be able to safely navigate the high seas, are required to be certified by one of the major international classification societies that exist worldwide.

32.     A classification society establishes and maintains technical standards for the construction and operation of vessels. The primary role of a classification society is to classify ships and certify that their design as well as machinery (mechanical and electrical) are and continue to be maintained in accordance with the published standards.  It also carries out periodical surveys of ships to ensure they continue to meet the parameters of set standards.

33.     The M/T CELANOVA's classification society is Bureau Veritas, headquartered in Paris, France.

34.     As a result of the problems encountered by the M/T CELANOVA, The American Club conducted an investigation concerning the vessel's Class status. On or about January 20, 2020, The American Club learned that Bureau Veritas, on January 8, 2020, had decided to suspend the Class of the M/T CELANOVA.

35.     Globalgas did not inform The American Club regarding the vessel's suspension of Class.

36.     Pursuant to The American Club's Class I, Rule 1, Section 4.14, Globalgas, as a condition for The American Club's continued provision of P&I and FD&D marine insurance coverage, was required to ensure, *inter alia*, that the vessel "be and remain throughout the period of insurance classed with a Classification Society approved by the Managers."  Class I, Rule 1,

Section 4.14 further stipulates that "[i]n the event that a Member is, or comes to be in breach of any of the conditions referred to in this Rule1.4.14 cover automatically ceases with immediate effect without notice."

37.     On or about January 28, 2020, The American Club, via brokering channels, advised Globalgas it was terminating P&I and FD&D coverage.  (Exhibit D annexed hereto.) The Termination Endorsements for P&I and FD&D coverage issued by The American Club on January 28, 2020 unambiguously stated: "[w]ith effect from January 8, 2020, cover hereunder is terminated by reason of failure to comply with Class 1, Rule 1, Section 4.14 ('Classification and Statutory Requirements')." (*Id.*)

**FIRST CAUSE OF ACTON**
**(Breach of Contract)**

38.     The American Club realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as if fully set forth herein.

39.     Pursuant to the subject maritime insurance contracts, as reflected in the P&I and FD&D Certificates of Entry as well as The American Club's By-Laws and Rules, Globalgas agreed to pay, in consideration for the subject marine insurance coverage, all premiums due.

40.     By failing to remit the sum of $79,617.71, as reflected in Exhibit B annexed hereto, Globalgas has failed to meet its obligations under the subject marine insurance contracts.

41.     As a result of the Defendant's breach of the subject marine insurance contracts, The American Club has sustained damages in the amount of $79,617.71, together with interest at the contractually agreed rate, for which the Defendant is liable.

**SECOND CAUSE OF ACTION**
**(Account Stated)**

42.     The American Club realleges and incorporates by reference the allegations set forth in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     The American Club presented an account to the Defendant in the form of invoices and supporting documentation for all the services rendered by The American Club concerning marine insurance premiums and reimbursement of payments made on Defendant's behalf with respect to the towing of, and effecting all of the necessary repairs to, the M/T CELANOVA.

44.     The account presented to the Defendant by The American Club totaled the sum of $559,478.17.

45.     The aforesaid account totaling $559,478.17 was delivered to, accepted and retained as correct (without objection or protest) by the Defendant but no part of which has been paid to date.

46.     By virtue of the foregoing, The American Club has sustained damages in the sum of $559,478.17, together with interest at the contractually agreed rate, for which the Defendant is liable.

### THIRD CAUSE OF ACTION
### (*In Personam* Liability for the Provision of Necessaries and Repairs to the Vessel )

47.     The American Club realleges and incorporates by reference the allegations set forth in paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48.     The American Club, at the request of the Defendant, contracted and paid for, *inter alia*, the services of a towing company to tow the M/T CELANOVA to safety to the Port of Manila when she lost her rudder and drifted perilously at sea, the services of repair and parts supplying companies to furnish spare parts and effect all necessary repairs to the vessel and the services of cargo specialists to care for and preserve the cargo to avert a catastrophic explosion onboard.  These expenses totaled the sum of $479,860.46.

49.      In contracting and paying for the aforesaid services, The American Club furnished necessaries and repairs to the M/T CELANOVA and, in so doing, it now possesses a

9

right to recover from the Defendant *in personam* the value of the necessaries furnished, and repairs made to, the vessel.

50.     By reason of the foregoing, the Defendant is liable to The American Club in the sum of $479,860.46, together with interest at the contractually agreed rate.

### FOURTH CAUSE OF ACTION
### (Unjust Enrichment)

51.     The American Club realleges and incorporates by reference the allegations set forth in paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     The American Club contracted and paid for, *inter alia*, the services of a towing company to tow the M/T CELANOVA to safety to the Port of Manila when she lost her rudder and drifted perilously at sea, the services of repair and parts supplying companies to furnish spare parts and effect all necessary repairs to the vessel and the services of cargo specialists to care for and preserve the cargo to avert a catastrophic explosion onboard. These expenses totaled the sum of $479,860.46.

53.     The foregoing expenses paid by The American Club were not covered by the marine insurance it provided to the Defendant.

54.     In paying for the foregoing expenses, The American Club provided a benefit to the Defendant and the Defendant has been enriched thereby.

55.     To the extent that the Defendant has failed to reimburse The American Club for the foregoing expenses, the Defendant has been unjustly enriched and the circumstances are such that, in equity and good conscience, the Defendant must pay The American Club for such expenses.

56.    By virtue of the foregoing, the Defendant has been unjustly enriched in the sum of $479,860.46, together with interest at the contractually agreed rate, for which it is liable to The American Club.

### FIFTH CAUSE OF ACTION
#### (Implied-in-Law Contract for *Quantum Meruit*)

57.    The American Club realleges and incorporates by reference the allegations set forth in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58.    The American Club contracted and paid for, *inter alia*, the services of a towing company to tow the M/T CELANOVA to safety to the Port of Manila when she lost her rudder and drifted perilously at sea, the services of repair and parts supplying companies to furnish spare parts and effect all necessary repairs to the vessel and the services of cargo specialists to care for and preserve the cargo to avert a catastrophic explosion onboard. These expenses totaled the sum of $479,860.46.

59.    The foregoing expenses paid by The American Club were not covered by the marine insurance it provided to the Defendant.

60.    The American Club paid for the foregoing services in good faith and the Defendant accepted them.

61.    The American Club thereafter sent various invoices to the Defendant reflecting all of the payments The American Club had made for the foregoing services.

62.    The value of the foregoing services, as reflected in the invoices The American Club presented to the Defendant, were reasonable.

63.    The Defendant has thus far failed to pay The American Club for the foregoing services.

64.    By reason  of the foregoing, the Defendant is liable in *quantum meruit* to The American Club in the sum of $479,860.46, together with interest at the contractually agreed rate.

## SIXTH CAUSE OF ACTION
### (Attorneys' Fees)

65.     The American Club realleges and incorporates by reference the allegations set forth in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

66.     Pursuant to The American Club's Class I, Rule 1, Section 4.49(c), The American Club has a contractual right to "reasonable legal fees, collection expenses and other costs of recovering all amounts due from a Member or former Member plus interest…."

67.     By virtue of the foregoing, the Defendant is liable to The American Club for all reasonable legal fees and costs it will incur in prosecuting this action.


**WHEREFORE**, the Plaintiff, The American Club, requests that this Court enter an Order, awarding the following relief:

(a) Judgment in favor of the Plaintiff and against the Defendant in the sum $559,478.17, together with interest at the rate contractually agreed to by the parties;

(b) An Award of reasonable attorneys' fees and costs, as per the terms and conditions of the subject marine insurance contracts; and

(c) Such other, further, and different relief as the Court deems just and proper.

Dated: New York, New York
     July 21, 2020

FREEHILL HOGAN & MAHAR LLP
*Attorneys for Plaintiff*


By: _____
    Manuel A. Molina
    Eric J. Matheson
    molina@freehill.com
    matheson@freehill.com